WILLIAM C. BUTLER, PLAINTIFF IN ERROR, v. THE EASTON AND AMBOY RAILROAD COMPANY AND THE LEHIGH VALLEY RAILROAD COMPANY, DEFENDANTS IN ERROR.

Argued June 19, 1908—Decided November 16, 1908.

1. Where the evidence tends to show that the defendant left standing in a public highway, unnecessarily and for an unreasonable time, an object naturally calculated to frighten horses of ordinary gentleness, at which the ordinarily gentle horse of the plaintiff took fright, whereby the plaintiff was injured, the question of the negligence of the defendant is for the jury.

2. The evidence tended to show that the plaintiff was driving an ordinarily gentle horse upon a public highway; that on approaching a railroad crossing where a locomotive engine and tender had been left standing partly in the highway, he waited at a reasonable distance and for a reasonable time to see if the engine would move on or if his horse would take fright; that, having ascertained that the engine would not move and that his horse was not frightened, he drove on along the traveled portion of the highway. *Held,* that the question of his contributory negligence should have been submitted to the jury.

On error to the Supreme Court.

For the plaintiff in error, *William C. Gebhardt.*

For the defendants in error, *H. Burdett Herr.*

The opinion of the court was delivered by

TRENCHARD, J.    This writ of error brings under review a judgment of the Supreme Court entered on a nonsuit at the Hunterdon Circuit.

The action was brought by William C. Butler to recover for injuries resulting from being thrown from his wagon by reason of his horse taking fright and shying at a locomotive engine.

Since other verdicts in this case were under review in the Supreme Court (43 *Vroom* 27 and 45 *Id.* 245), the plaintiff has amended his declaration.    He now bases his right to recover compensation for his injuries upon the following averment in his amended declaration: "That the said defendants, by their servants, then and there unlawfully, carelessly, negligently and unnecessarily permitted and allowed the said locomotive engine and tender to stand near, adjacent to and upon the said public highway, which said locomotive engine and tender was of great size, and of such size, shape and color as was naturally calculated to frighten horses of ordinary gentleness that were upon said highway."

At the close of the plaintiff's case the learned trial judge granted a nonsuit, and this writ of error raises the question whether, in so doing, there was error.

The evidence, when the nonsuit was directed, would have justified the jury in finding the following matters of fact: Where the tracks of the Easton and Amboy Railroad Company at Lansdown cross a public road at about a right angle, a locomotive engine, with tender attached, belonging to the Lehigh Valley Railroad Company, was standing on the track and partly within the limits of the public highway.    The engine was a new, large "hog" locomotive, and was just out of the shops "newly painted and shiny and smelled of paint."    It was in charge of an employe of the Lehigh Valley Company. The plaintiff approached the crossing, seated in a one-horse

wagon. His horse was ordinarily gentle and was being driven by the plaintiff's son, who occupied a seat in the wagon beside the plaintiff. When some distance from the locomotive, and because of its presence, the horse was stopped for five or ten minutes to wait for the engine to get .out of the way, or to see if the horse would take fright. The engine not moving, the horse, which had shown no signs of fright, was driven along the traveled part of the road past the rear end of the tender and locomotive. When the horse reached the crossing it took fright and ran away, throwing out and injuring the plaintiff. At the time of the accident the engine was undergoing repairs and showed no signs of steam or smoke. It had been standing there about half an hour. The repairs were unnecessarily being made at the crossing. It appeared that they could have been made just as conveniently several hundred feet away from the public highway.

The plaintiff seems to have been nonsuited upon the theory that there was no evidence of the negligence of the defendants, and that the plaintiff was guilty of contributory negligence.

We think both questions should have been submitted to the jury.

The general rule is that an object in the public highway of such a character that it is naturally calculated to frighten horses of ordinary gentleness may ·constitute a nuisance. *Ell. Roads* (*2d ed.*), § 649.

Liability for injuries resulting therefrom has been recognized by our Supreme Court in *Ayars* v. *Camden and Suburban Railway Co.,* 34 *Vroom* 416, and in this court in *McCann* v. *Consolidated Traction Co.,* 30 *Id.* 481.

In *Wharton's Law of Negligence,* § 107, it is said that inasmuch as it is neither unnatural nor unusual for horses, when traveling on a road, to become frightened at extraordinary noises or sights, so, therefore, he, who upon a road thus traveled by horses, makes noises or exhibits such spectacles, is liable for any damages caused by their taking fright.

The same author, at section 836, notes the distinction between "necessary and unnecessary instruments of alarm,"

and says that the former—such, for instance, as a steam whistle on a locomotive, or the like—being essential to important industries, are tacitly, if not expressly, licensed by the state, and the necessary use of them is not *per se* negligence, even though animals should be frightened thereby and injury ensue; though it is otherwise, he declares, *when the use is not necessary to the industry.*

In accordance with the principle thus laid down by the text-writer many cases, besides those referred to, have been decided. See *Jones* v. *Housatonic Railway Co.,* 107 *Mass.* 261; *Bussian* v. *Milwaukee, &c., Railway Co.,* 56 *Wis.* 325; *Denver, &c., Railway Co.* v. *Robbins,* 2 *Col. App.* 313; *Atchison, &c., Railway Co.* v. *Morrow,* 4 *Kan. App.* 199; *Kyne* v. *Wilmington, &c., Railway Co.,* 7 *Houst.* (*Del.*) 185; *Myers* v. *Richmond, &c., Railway Co.,* 87 *N. C.* 345.

An examination of the cited cases shows that it is negligence for a railroad company to leave standing in a public highway, unnecessarily and for an unreasonable time, an object naturally calculated to frighten horses of ordinary gentleness.

We have pointed out that in the present case the evidence tended to show that the engine and tender were left standing on the public highway for half an hour unnecessarily.

Under these circumstances the question of the character of the object, as well as the urgency of the occasion and the reasonableness of the use, was for the jury, and hence the negligence of the defendants should have been submitted to them. *McCann* v. *Consolidated Traction Co., supra; Ayars* v. *Camden and Suburban Railway Co., supra; Tompkins* v. *North Hudson Railway Co.,* 34 *Vroom* 322; *Johnson* v. *New York and Long Branch Railroad Co.,* 36 *Id.* 421; *Esler* v. *Camden and Suburban Railway Co.,* 42 *Id.* 180; *Mumma* v. *Easton and Amboy Railroad Co.,* 44 *Id.* 653.

The alleged contributory negligence of the plaintiff was also a question for the jury.

The fact that the plaintiff might have taken another and more inconvenient road is immaterial. He was entitled to

travel the public highway in question. To hold otherwise would permit a railroad company to exclude such travelers from the highways. We have pointed out that the jury was justified in finding that the plaintiff was driving an ordinarily gentle horse; that he waited at a reasonable distance for a reasonable time to see if the locomotive would move on or if his horse would take fright. When it appeared that the locomotive was not going to move and that his horse was not frightened, the plaintiff drove on. Under these circumstances it cannot be said, as a matter of law, that the danger was so imminent and threatening that a reasonably prudent man would not assume the hazard of encountering it. It will not do to say that if he did not anticipate the fright of the horse, neither could the defendants. They were the original wrong-doers and were bound to anticipate any result that might reasonably be anticipated.

We have already said that the evidence tended to show that the engineer in charge of the locomotive was in the employ of the Lehigh Valley Company, and that the railroad was operated by the Easton and Amboy Company. It was therefore for the jury to say whether either or both defendants were liable.

The nonsuit not being justified, the judgment under review should be reversed and a *venire de novo* awarded.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, VOORHEES, VROOM, GREEN, GRAY, J.J.   6.

*For reversal*—THE CHANCELLOR, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, J.J.   9.